IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DWAYNE A. COX,

    Plaintiff,

v.                                                     Case No. 15-CV-395

MICHAEL BAENEN, et al.,

    Defendants.

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dwayne A. Cox either expressly admits or does not properly dispute the findings of fact that entitle the State Defendants to judgment as a matter of law on both the Eighth Amendment deliberate indifference claim and the negligence claims. Cox has presented no evidence to show that the State Defendants ignored his fume complaints. The undisputed record shows instead that the State Defendants took remedial measures without any delay in response to Cox's complaints about the odor and occasional presence of fumes in the North Cell Hall. (Dkt. 227:33-34, ¶¶ 22, 25-26.)[1] As a result, Cox's constitutional claim fails as a matter of law.

The undisputed record further shows that, at all relevant times to this case, there were no Wisconsin Department of Corrections ("Corrections") policies or

---

[1] Cox proposes the remedial measures as being ineffective but nonetheless acknowledges that the State Defendants took such measures. (Dkt. 227:33-34, ¶¶ 22, 25-26.)

directives specifically regarding how staff were to respond to and address complaints of potential environmental issues. (Dkt. 227:28 (¶ 96).) Cox concedes that decisions on how to handle those issues were left to the discretion of Green Bay Correctional Institution's Buildings and Grounds Staff. (Dkt. 227:27-28 (¶ 94).) As such, the State Defendants are entitled as a matter of law to discretionary immunity from Cox's negligence claims. (Dkt. 207:21-27.) Even if the State Defendants did not have discretionary immunity, Cox's negligence claims also fail as a matter of law because Cox has not provided evidence sufficient to demonstrate that he has met his burden to prove causation. *Id*. at 19-20.

The State Defendants accordingly request that the Court grant their Motion and dismiss Cox's claims against the State Defendants. Furthermore, in opposing the State Defendants' Motion, Cox submitted a declaration with statements that directly contradicts his prior sworn testimony. The State Defendants, therefore, also request that the Court disregard Cox's declaration as a "sham affidavit."

## ARGUMENT

**I. The undisputed record proves that the State Defendants were not deliberately indifferent to Cox's conditions of confinement.**

**A. The State Defendants did not ignore Cox's complaint about fumes.**

To succeed on a deliberate indifference claim based on conditions of confinement, a plaintiff must prove that the defendant (1) was aware of an objectively "substantial risk or serious injury" to the plaintiff, and (2) "failed to take appropriate steps to protect [the plaintiff] from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). "Proving that [an] officer was deliberately indifferent to the safety of a detainee requires more than a showing of negligent or even grossly negligent behavior. The officer must have acted with the equivalent of criminal recklessness." *Id.* (internal citation and quotations omitted).

Cox claims to have submitted substantial evidence, mainly his own declaration, to support his claims that he was at a substantial risk or injury and harm. He asserts that the State Defendants place too much reliance on the fact that he never sought treatment for his symptoms; he suggests that his failure to seek treatment has no bearing on a conditions of confinement claim. But Cox misses the point. These records show that Cox initially reported to Green Bay's Health Services Unit (HSU) with concerns about having the flu and that, in less than two days, he reported feeling better and no longer having symptoms. Now, four years later, he claims, according to his deposition testimony, to have been experiencing dizziness, nausea, burning/stinging eyes and blurred vision, breathing difficulties, vomiting, and a daily fear of death at the same exact time when *he was telling HSU staff that he had no symptoms*. This curious contradiction between Cox's medical records and his deposition testimony is undisputed. (Dkt. 227:7-12 (¶¶ 20-40[2]).)

Cox also fails to recognize that he needs to show that the State Defendants were aware of his objectively "substantial risk or serious injury." *Farmer,* 511 U.S. at 834. None of the State Defendants even learned of fume complaints until

---

[2] Cox disputes as misleading proposed findings of fact 27, 33, 36, and 38, but he cites no evidence whatsoever to substantiate that it is a disputed fact. As stated in the State Defendants Reply to Cox's Response to Proposed Findings of Fact, because the facts are not properly controverted, the Court should deem them admitted. *See* Civil L.R. 56(b)(4).

February 2014. (Dkt. 227:18-22 (¶¶ 66, 70, 75, 81-82).) And the State Defendants each testified to their belief that the construction fumes presented no risk of harm to the inmates.

Cox denies, without any evidentiary support, Leurquin's belief that the fumes did not pose a risk of harm to any of the inmates in North Cell Hall. (Dkt. 227:19, ¶ 69.) Cox admits that Defendant Basten believed that the fumes posed no substantial risk of harm to the inmates' safety. (Dkt. 227:20, ¶ 73.) Cox also presented no evidence to refute Basten's testimony that she asked Green Bay's HSU whether any inmates had submitted medical complaints about the fumes and was told by HSU that there were none.[3] (Dkt. 227:21, ¶ 74.)

Cox admits that Defendants Baenen and Pusich testified that they did not believe there was a risk of harm to the inmate's in North Cell Hall. (Dkt. 227:21, 23, ¶¶ 75, 80.)

As for Defendant Mattison, he too believed that the construction fumes did not pose a substantial risk of harm to the health or safety of the inmates in North Cell Hall. (Dkt. 227:22, ¶ 77.) Cox denied this proposed finding on the grounds that it "misstate[d] the record," but, as support for his denial, Cox presents only

---

[3] Cox asserts that he submitted to HSU a medical complaint regarding the fumes, in the form of an information/interview request. (Dkt. 227: 21, ¶ 74.) The evidence he cited, Ex. 80, at 000047 to his deposition, does not support his representation. The form he submitted to HSU reads that he allegedly was experiencing symptoms "due to the construction project." (Dkt. 227:21, ¶ 74.) The HSU staff member did not know what Cox was referring to regarding construction and asked him to submit an HSR (the appropriate means for requesting medical treatment from HSU, of which Cox was well aware given that he had submitted multiple HSRs a mere ten days earlier when he requested an appointment with HSU). (Dkt. 227:8, ¶ 24.) Furthermore, even if Cox had submitted a medical complaint

arguments about why he believes Mattison's investigation was inadequate. (Dkt. 227:22, ¶ 77.) Cox presented no evidence to prove that the construction fumes actually caused a substantial risk of harm to his health or safety.[4] And the evidence cited by Cox in denying the proposed finding does not refute that Defendant Mattison *believed* that the inmates were not at a risk of harm. (Dkt. 227:22, ¶ 77.)

To prove deliberate indifference, Cox must demonstrate that State Defendants acted with a "'sufficiently culpable state of mind.'" *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). Officials must "know of and disregard an excessive risk to inmate health." *Id.* at 653 (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Here, as demonstrated above, the State Defendants did not subjectively draw the inference that there was an actual risk.

For argument's sake, even had the State Defendants drawn such an inference, the undisputed record conclusively establishes that the State Defendants took appropriate steps within their respective designated authorities and roles to protect Cox and the other inmates from harm.

Defendant Leurquin reported the complaints to his superior for health and safety matters, Chris Timmers, which Cox does not dispute. (Dkt. 227:19, ¶ 67 (denial relates only to the substance of Timmers's response not to Leurquin alerting his supervisor).) Cox admits that Defendant Pusich took action by forwarding any

---

regarding the fumes, he did not present any evidence to show that Basten was aware of this complaint to HSU, thus what she testified as to her belief remained unchanged.

complaints she received to the individuals at Green Bay who were responsible for handling construction-related complaints. (Dkt. 227:24, ¶ 81.) Cox further admits that Defendant Baenan, Green Bay's Warden, spoke with Defendant Basten and directed her to make sure that the institution was following any remedial procedures that Defendant Mattison recommended. (Dkt. 227:23, ¶ 79.)

Cox likewise does not dispute that Defendant Basten relied on the judgment of the Buildings & Grounds Supervisor, Chris Timmers, who made the decision to turn off the air intake valves, and on the report of Corrections' Chief Engineer, Defendant Mattison, in which he concluded that the system was functioning properly and that it was "not expected that dangerous concentrations of fumes or combustion by-products would have been present." (Dkt. 227:22, ¶ 77.)

Defendants Leurquin, Basten, Baenen, and Pusich were not engineers or HVAC specialists: Leurquin was a correctional officer; Pusich was a captain; Basten was the Correctional Services Manager; and Baenan was Green Bay's Warden. (Dkt. 227:2, ¶¶ 2-5.) Without question, it was reasonable for these individuals to rely on the knowledge and experience of Timmers, the Buildings & Grounds Manager, and Mattison, Corrections' Chief Engineer. (Dkt. 227:2-3, ¶¶ 6-7.)

When Defendant Mattison conducted an investigation by observing the ventilation system, he determined that the ventilation system appeared to be working appropriately. He also opined, based on his knowledge and expertise, that

---

[4] Cox asserts that his expert has rendered such an opinion, but that argument directly contravenes with the expert's numerous representations throughout his deposition that he was not opining on causation. (Dkt. 227:24, ¶ 84.)

Timmers's proposed solution to turn off the air intake valves should address the fume concerns. (Dkt. 227:22, ¶ 78.) Cox denies this fact as misstating the record, but the evidence Cox cites does not refute that Mattison performed an investigation. Cox merely cites to other parts of Mattison's deposition testimony and argues what Mattison should have done. *Id*. Notably missing from the Cox's response is any evidence from a certified engineer opining that the investigation Mattison performed did not comport with industry standard. Nor is there any evidence to establish the merit of the challenges Cox—a person with no training as an engineer—makes to Mattison's report.

Cox failed to submit a single piece of evidence to support his position that the State Defendants ignored his complaints. In his own proposed findings, Cox states that "[t]he heating system was turned off in an attempt to prevent fumes from entering," and that large fans were set up "purportedly to mitigate the concentration of fumes." (Dkt. 227:33-34, ¶¶ 22, 25-26.)

The record shows that Cox was not at risk of harm; it shows that the State Defendants drew no inference Cox was at a risk of harm; and it shows that the State Defendants, despite not even drawing an inference, still acted to ensure the inmates' safety to the *possibility* of a risk from the fumes by turning of the air handlers and turning on the fans. Cox's deliberate indifference claim regarding his fumes-complaints fails as a matter of law. *Guzman*, 495 F.3d at 857.

### B. Given the undisputed record, there is no liability for a conditions-of-confinement claim due to cold temperatures.

Cox's claim that his conditions of confinement were unconstitutional due to cold temperatures also is without merit. He failed to present any evidence to prove that he suffered an illness from the exposure to the cold temperatures. (Dkt. 227: 28-40; Dkt. 229.) Without such evidence, there is no liability on his constitutional claim. *Benson v. Godinez*, 919 F. Supp. 285, 289 (N.D. Ill. 1996) (internal citation omitted); *see also Scotti v. Russell*, 175 F. Supp. 2d 1099, 1103 (N.D. Ill. 2001). By his own allegations, Cox's "harm" suffered was that he had to dress in warmer clothes. (Dkt. 177: 5 (¶ 36).)

### C. The State Defendants are entitled to qualified immunity.

Cox did not cite to any cases establishing that the issues pertaining to his deliberate indifference claim are "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 731 (2011). There is a debate over whether Cox presented with a serious medical need, given multiple courts' findings that "flu-like symptoms and minor respiratory ailments do not present serious medical needs that posed a substantial risk of harm." *See e.g. Ayoubi v. Dart*, Slip Op. Case No. 13 C 8983, 2017 WL 242614, at *4 (N.D. Ill. Jan. 17, 2017) (internal citations and quotations omitted), *aff'd* __ Fed. App'x __, 2018 WL 671152. It is not "beyond debate" that Cox having to dress in warmer clothes due cold temperatures amounts to a constitutional violation. Courts have held that being subjected to cold temperatures is not a constitutional violation without additional evidence showing that a person suffered an illness resulting

from exposure to the cold. *Benson*, 919 F. Supp. at 289; *see also Scotti*, 175 F. Supp. 2d at 1103. Moreover, Cox cited to no case law that established that it is "beyond debate" that a defendant is deliberately indifferent if he or she takes an action in response to a concern, but not the inmate's preferred action.

## II. The State Defendants are not liable for Cox's state law negligence claims.

Cox's expert testified in no uncertain terms that he "does not provide evidence on causation." (Dkt. 227:24-25, ¶ 84.) Cox argues that this quotation is taken out of context and that his expert testified that "the likely source of Mr. Cox's symptoms were from the exhaust fumes." (Dkt. 227:39, ¶ 55.) Cox asserts that the presence of fumes coinciding with his alleged symptoms demonstrates causation, but there is not a shred of evidence to demonstrate that the concentration of fumes in North Cell Hall ever was toxic. Assuming Cox experienced the symptoms he alleges, the record shows that Cox himself concluded his symptoms in the beginning of the February were from the flu. (Dkt. 227:12, ¶ 42.)

Cox asserts, with no corroborating medical or mental health records, that he experienced mental and emotional stress from the fumes' odor. He submits a declaration in which posits that he never went to Psychological Services Unit (PSU) out of an inherent mistrust of institution staff. As stated in Section III below, this is a self-serving representation made for the purpose of trying to survive summary judgment and is contradicted by Cox's prior deposition testimony and his own medical records. Cox evidently trusted PSU enough to treat his insomnia in October 2015, at which time he reported that he had never had experienced any other

mental health problems. (Dkt. 227:18, ¶ 65.) Moreover, Cox's representation that he feared dying every day for four months without submitting so much as a Psychological Services Request form (or without raising his *fear of death* at one of his five HSU appointments in the beginning of February 2014) borders on absurdity.

The State Defendants also have raised a discretionary immunity defense, and the undisputed record provides a basis for the Court to conclude that the State Defendants are shielded from liability under this doctrine. Cox admits that there is no Corrections policy that instructs specifically how staff is to respond to and address complaints regarding potential environmental issues. (Dkt. 227:28, ¶ 96.) Cox cites to no evidence establishing a ministerial duty on behalf of the State Defendants to respond to fume complaints in a specific way.

Cox asserts that the known-danger exception applies to the State Defendants. It does not. "[A] dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.'" *Lodl,* 2002 WI 71, ¶ 38 17, 253 Wis. 2d 323, 646 N.W.2d 314 (citation omitted). "For the known danger exception to apply, the danger must be compelling enough that a self-evident, particularized, and non-discretionary" action is required. *Id*. at ¶ 40. To this day, no one knows whether there was any danger because there was never a determination that the odor of fumes was anything more than just that: a noxious odor. Cox assert

that the State Defendants are liable for not confirming this fact. Green Bay staff asked the Corrections' Engineer to take a look at the ventilation system and also to verify whether the proposed solution to turn off the intake valves would address the issue. The State Defendants were under no obligation to take further action.

Cox counters that the State Defendants were obligated to "take reasonable steps," but he points to no evidence or authority that dictates that the State Defendants were to take particularized, non-discretionary action. The fact that Cox suggests that there were other actions that the State Defendants could have and should have taken actually underscores the discretion State Defendants had to respond to such complaints. Therefore, the State Defendants are entitled to discretionary immunity.

## III. The Court should disregard Cox's declaration as a sham affidavit.

"It is well established in this Circuit that, as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of ... the unmistakable need to clarify prior ambiguous statements." *See, e.g., Gates v. Caterpillar, Inc.*, 513 F .3d 680, 688 n. 5 (7th Cir. 2008) (citations omitted); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).

There are glaring inconsistencies between Cox's declaration submitted in opposition to the State Defendants' Motion for Summary Judgment and his testimony from a deposition taken of him a short two months ago.

- 11 -
Case 2:15-cv-00395-PP   Filed 06/01/18   Page 11 of 15   Document 237

In paragraph 11 of his declaration, Cox writes:

> Between November 2013 and January 2014, I spoke to cell hall staff, including Sergeant Laufenburg, about the fumes. I also spoke to Laufenburg about the fumes on several occasions and told him about prisoner complaints. I understand that Laufenburg and Corrections Officer Zuge submitted work orders to GBCI maintenance asking that something be done to stop the fumes from entering NCH.

(Dkt. 229:4.) Cox makes this assertion presumably in an effort to support his contention that the State Defendants were aware for a much longer period of time that there were complaints about the fumes. He likely also makes this assertion to explain away why it took *months* after his first alleged symptom (daily fear of dying, beginning at the end of November 2013) to complain about the fumes. Regardless of the motive for his misrepresentation, the declaration squarely contradicts his March 2018 deposition testimony:

> **State Defendants' Counsel:** Okay. So you drafted this complaint at the library. Before filing the Inmate Complaint or prior to this lunch conversation that you had, were you speaking with anybody else at the institution[,] staff or fellow inmates[,] about the fumes?
>
> **Cox:** No. Ledford did all of the talking to the staff. He knows them all. I don't—that could be a dangerous situation. I don't do that.
>
> **Counsel:** Okay. So you are not talking to the staff?
>
> **Cox:** No.
>
> **Counsel:** You are only talking to fellow inmates?
>
> **Cox:** Yeah.

(Dkt. 217:36-37.)

Additionally, in paragraph 19, Cox represents that, after supposedly being told both by a fellow inmate on February 13, 2014, and by an HSU nurse named Amanda on February 19 that there was no treatment available for the fumes-

symptoms, he "decided not to go to HSU for treatment." (Dkt. 229:5.) He further wrote that he "understood that, if [he] did go to the HSU, [he] would have to pay a co-pay only to be told that there was no treatment for [his] symptoms." *Id*. Cox presents this excuse as his reason for not seeking treatment from HSU. But this contradicts his deposition. He testified at his deposition that his conversation with the other inmate (about the inmate's appointment with HSU) and his conversation with Nurse Amanda were his excuses for not bringing up the fumes at his appointments at HSU in the beginning of February 2014. (Dkt. 217:36-37.) He then was reminded that both of these conversations, by his own account, had actually occurred *after* his February 2014 appointments. Cox now tries to use a declaration to save-face from questionable deposition testimony indicating that Cox was just making things up as he went along.

Some courts have allowed inconsistencies between testimony and a declaration when there is a representation at the deposition that the deponent simply does not recall (only later to recall in a declaration). *Simpson v. Mason*, No. 13-CV-776-JDP, 2015 WL 5918928, at *7 (W.D. Wis. Oct. 9, 2015). Lack of recollection is not the issue here. Cox never even attempted to cover up the defects in his story by stating that he could not recall. Rather, when asked how he could rely on another inmate's March appointment (which appears now to have been in mid-February, but still after Cox's appointments) and the February 19 Nurse Amanda conversation to justify his failure to raise the fumes-issue at his February 2014 HSU appointments, Cox had no justification. Cox's blatant disregard for the

truth, as demonstrated in his declaration, merits the proportionate consequence of disregarding that declaration in its entirety.

## CONCLUSION

The undisputed record shows that the State Defendants are not liable for any of Cox's claims.

The State Defendants did not violate Cox's constitutional rights. He was not at a substantial risk of serious harm or injury; the undisputed record shows the State Defendants were unaware of any risk of harm or injury; and the State Defendants made reasonable efforts to address the fume complaints.

The manner in which the State Defendants chose to address the fume complaints was entirely discretionary, and, as a result the State Defendants are immune from liability for Cox's negligence claims based on discretionary immunity. The State Defendants additionally are immune from liability because the undisputed record shows that Cox has not—and cannot—prove causation.

The State Defendants respectfully request that the Court grant summary judgment in their favor and dismiss this case in its entirety.

Dated this 1st day of June, 2018.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General

s/Theresa M. Anzivino
Theresa (Esa) M. Anzivino (#1079343)
Katherine D. Spitz (#1066375)
Assistant Attorneys General

Attorneys for Warden Michael Baenen, Yana Pusich, Scott Leurquin, Amy Basten, and Randall Mattison

Wisconsin Department of Justice
17 W. Main St.
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8554
(608) 267-8906 (fax)
anzivinotm@doj.state.wi.us