UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE A. COX,

                    Plaintiff,

     v.                             Case No. 15-cv-395-pp

MICHAEL BAENEN, YANA PUSICH,
AMY BASTEN, RANDY MATTISON,
SCOTT LEURQUIN, SMA CONSTRUCTION SERVICES,
MIKE ABHOLD, BURT FEUCHT,
and SOCIETY INSURANCE,

                    Defendants.

## ORDER GRANTING DEFENDANTS ABHOLD, FEUCHT, SMA CONSTRUCTION SERVICES AND SOCIETY INSURANCE'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 201) AND DISMISSING CASE

Plaintiff Dwayne Cox, a Wisconsin state prisoner, filed a complaint alleging that nine defendants—Warden Michael Baenen of the Green Bay Correctional Institution, Security Supervisor Yana Pusich, Corrections Manager Amy Basten, Grounds Superintendent  Chris Timmers, Engineer Randy Mattison, Corrections Officer Scott Leurquin, John Doe Construction Company, CEO John Doe Construction Company and Site Supervisor[s] from John Doe Construction Company—violated his rights by exposing him to exhaust fumes and extreme cold during the construction of a bath house at the institution.[1] Dkt. No. 1. That complaint alleged four causes of action—an

---

[1] The plaintiff didn't have a lawyer when he filed the case, but United States District Judge Charles N. Clevert, Jr., who initially presided over the case, recruited an attorney to represent the plaintiff *pro bono*. Dkt. No. 162. The case was reassigned to this court on Judge Clevert's retirement.

Eighth Amendment conditions-of-confinement claim against all defendants; a Fourteenth Amendment equal protection claim against all defendants; a state-law negligence claim against all defendants; and a state law claim of *respondeat superior,* failure to train and failure to supervise against all defendants. Id.

The plaintiff subsequently filed a motion to amend the complaint, dkt. No. 11, and the court granted that motion, dkt. no. 17. The amended complaint added a fifth cause of action against all defendants—a state-law claim of negligent infliction of emotional distress. Dkt. No. 18. At screening, Judge Clevert allowed the plaintiff to proceed on his Eighth Amendment claim and the state law claims, but did not allow him to proceed on the equal protection claim. Dkt. No. 17 at 7.

After extended litigation regarding discovery, the plaintiff filed a motion for leave to file a second amended complaint, naming Doe construction defendants. Dkt. No. 116. The court granted that motion, dkt. no. 124, and the second amended complaint became the operative complaint, dkt. no. 125. The plaintiff identified SMA Construction Services as the company that built the bath house, Mike Abhold as SMA's CEO, Burt Feucht as SMA's site supervisor, and Liberty Mutual Insurance Company as SMA's insurer.[2] Dkt. No. 125. The

---

[2] Insurance company Liberty Mutual answered the complaint. Dkt. No. 151. The parties subsequently stipulated to dismissing Liberty Mutual as a defendant, dkt. no. 169, and the court dismissed it based on that stipulation, dkt. no. 170. The plaintiff eventually asked leave to amend the complaint to add Society Insurance Company as a Construction Defendant. Dkt. No. 186. The court granted that motion and ordered Society to answer. Dkt. No. 194.

second amended complaint otherwise contained the same factual allegations and alleged the same causes of action as the amended complaint. Id.

Baenen, Basten, Leurquin, Mattison, Pusich and Timmers—all employees of Green Bay Correctional and referred to as the "State Defendants—answered the second amended complaint. Dkt. No. 146. SMA Construction, Abhold and Feucht—who were not employees of the Department of Corrections and are referred to as the "Construction Defendants"—filed a motion to dismiss on the ground that they were not acting under color of law at the time of the alleged events. Dkt. No. 147. The plaintiff responded that he did not object to the court dismissing the Eighth Amendment and Equal Protection claims—the two federal claims—against the Construction Defendants.[3] Dkt. No. 167 at n.1. The plaintiff argued, however, that because the court had jurisdiction over the federal claims against the *State Defendants*, it should exercise its supplemental jurisdiction under 28 U.S.C. §1367 over the state law claims against *all* the defendants, including the Construction Defendants. Id. at 4-8. Judge Clevert agreed; he dismissed the federal Eighth Amendment claim against the Construction Defendants but denied their motion to dismiss the state law claims. Dkt. No. 171.

The Construction Defendants, including Society, filed their answer to the fourth amended complaint. Dkt. No. 196.

[3] Judge Clevert had ruled that the plaintiff could not proceed on the Fourteenth Amendment claim, so the stipulation to dismissal was not necessary as to that claim. Dkt. No. 17 at 7.

The Construction Defendants filed a motion for summary judgment on the state-law claims, dkt. no. 201, and the State Defendants filed a separate motion for summary judgment on the federal and state-law claims, dkt. no. 206. Both motions were fully briefed as of June 2018; the Construction Defendants filed supplemental authority in April 2019, dkt. no. 245.

On September 30, 2019, this court granted summary judgment in favor of the State Defendants on the Eighth Amendment claim. Dkt. No. 247 at 58. Because it granted summary judgment on the sole federal cause of action, the court concluded that it no longer had supplemental jurisdiction over the state-law claims against the State Defendants. Id. Because the *only* claims against the Construction Defendants are state-law claims over which the court had only supplemental jurisdiction under 28 U.S.C. §1367, its dismissal of the Eighth Amendment claim against the State Defendants deprives it of supplemental jurisdiction over the state-law claims against the Construction Defendants. The court must grant summary judgment in favor of the Construction Defendants.

In its order granting summary judgment in favor of the State Defendants, the court discussed extensive record evidence showing that between the fall of 2013 and March 2014, he and other inmates in the North Cell Hall at Green Bay were exposed to exhaust fumes from the diesel-powered heavy equipment being used to build the bath house. Dkt. No. 247 at 2-10, 24-47. More than one inmate reported symptoms such as dizziness, nausea, blurred vision, vomiting and headaches which they attributed to this exposure. More than one

4

inmate reported the issue to various prison staff members. The prison staff took action; building and grounds supervisor Chris Timmers (now deceased) turned off the air handlers near where the work was being done, ostensibly to avoid circulating the exhaust fumes through the living area. There were also large floor fans blowing, allegedly to keep some air moving. Unfortunately, turning off the air handlers also turned off the heat, at a time when Wisconsin was experiencing unusually cold temperatures. Inmates complained that turning off the air handlers and using the floor fans did not resolve the exhaust issues and resulted in the inmates being exposed to severe cold. Some inmates even proposed solutions, such as running tubing to vent the fumes back out of the North Cell Hall. The State Defendants investigated; the facility engineer, Randall Mattison, wrote a report indicating that he thought the problem was resolved and that no one had been harmed. Id.

In the decision granting summary judgment in favor of the State Defendants, the court wrote that

> The court concedes that this is a difficult case. The inmates were subjected to diesel exhaust fumes for an extended period. The inmates lived in the North cell Hall twenty-four hours a day, seven days a week, unlike guards or prison staff. They would have been exposed to these fumes more regularly, more consistently and more persistently that [corrections officers near the construction site] or anyone else involved in the situation. The fact that some prison staff . . . claimed they didn't suffer from headaches, nausea or other symptoms could well be attributed to their more limited exposure. It is concerning that [some State Defendants] did not visit the cell hall themselves, more than once, over time-to see if they could detect the problem the inmates reported. It is concerning that [some State Defendants] didn't interview the complaining inmates, as [the inmate complaint examiner had]. It is concerning that the HSU [Health Services Unit] incorrectly reported that no inmate had complained of symptoms related to the construction work. It is even

5

concerning that [the security officer] did not stamp inmate letters "received," or write on them the date that she received them, or acknowledge receipt in any way.

Also befuddling is the fact that it apparently didn't occur to maintenance staff that if they turned off the air handlers in the middle of the Wisconsin winter (and a particularly brutal winter), less heat would be pumped into the cell block and the inmates would be exposed to cold. While it is good that the maintenance staff tried to address the exhaust problem, it is perplexing that it didn't seem to occur to that staff that the "cure" might be as bad as, or worse than, the "disease." Chris Timmers, the buildings and grounds manager who appears to have been responsible for the idea of turning off the air handlers, has passed away, and none of the other defendants are members of the maintenance staff. The record does not indicate what the maintenance staff thought process was regarding the impact their "solution" might have on the cell hall temperature.

One might look at all these facts and conclude that staff at Green Bay mishandled the fumes situation, and that this arguable mishandling unnecessarily exposed inmates such as the plaintiff to health issues and cold. The inmates should not have been exposed to the fumes and the cold. The question is whether a reasonable jury could find that *these* defendants were deliberately indifferent to the risks, and to the inmates' suffering, under the Eighth Amendment. The court concludes that a reasonable jury could not reach that conclusion. The court will grant the State defendants' motion for summary judgment.

Id. at 56-58.

The court's sentiments, for what they are worth, are similar as to the Construction Defendants. The plaintiff pointed to evidence indicating that the Construction Defendants were aware of the inmate complaints regarding the fumes, and knew that the equipment emitted hazardous fumes near a prison residence hall where prisoners had limited movement. Dkt. No. 225 at 13-14. He points to evidence that the Construction Defendants didn't monitor the air quality until after the bath house had been enclosed. Id. at 13. He argues that

the Construction Defendants took no steps to reduce the fumes, despite this knowledge. Id. Might a reasonable jury have concluded that the Construction Defendants were negligent in some way? Possibly. Might a reasonable jury have concluded that the plaintiff and other inmates suffered physical symptoms as a result of their exposure to the fumes? Possibly. But because there no longer are federal claims before this court, it has no supplemental jurisdiction over the state-law claims that would have been the vehicle for presenting those questions to a jury.

The court **GRANTS** the Construction Defendants' motion for summary judgment. Dkt. No. 201.

The court **ORDERS** that this case is **DISMISSED**. The court will enter judgment accordingly.

The court gratefully acknowledges that the plaintiff has counsel. In an abundance of caution, however, the court notes that this order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief

from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 9th day of October, 2019.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge